UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| FALCON WATERFREE | ) | |
| TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05-cv-551 |
| | ) | |
| v. | ) | Honorable Janet T. Neff |
| | ) | |
| T.E. JANSSEN, et al., | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on plaintiff's motion to enforce the settlement agreement. The court conducted an evidentiary hearing on the motion on May 5, 2008. On the basis of the evidence presented at the hearing, the court finds that plaintiff has borne its burden of demonstrating a breach of paragraph 2(e) of the settlement agreement. The court will therefore award to plaintiff liquidated damages plus attorney's fees and costs under paragraph 9 of the settlement agreement.

**Procedural Background**

This case was commenced in the Kent County Circuit Court and was removed to this court on August 17, 2005. Plaintiff, Falcon Waterfree Technologies, LLC ("Falcon"), is a manufacturer of waterfree urinals. Plaintiff's claims against defendants arose from two separate relationships between the parties. First, beginning in the year 2003, defendant Ecotech Resource, Inc. ("Ecotech"), owned and controlled by defendant T.E. Janssen, became a distributor for

plaintiff's products. Second, at some point thereafter, Ecotech began to market a competitive cartridge offered as a suitable replacement for use in plaintiff's waterless urinals. Ultimately, defendants developed their own competing brand of waterless urinals and cartridges. Plaintiff's amended complaint set forth a claim for $140,000.00, representing unpaid invoices for products delivered to defendants in their capacity as a distributor for plaintiff's products. The remaining claims of Lanham Act violation, misappropriation of trade secret, breach of fiduciary duty, and breach of contract arose from defendant's alleged conduct in competition with plaintiff.

Plaintiff's claims under the Lanham Act, 15 U.S.C. § 1125, asserted false advertising arising from defendants' representations to the public that their competitive cartridge is a suitable replacement for use in Falcon urinals. Plaintiff alleged that defendants' cartridge violated plumbing codes and did not work properly in Falcon urinals. Plaintiff asserted that defendants' false advertising misled customers and resulted in a diversion of sales and a loss of good will to plaintiff.

On the eve of trial, the parties engaged in lengthy settlement negotiations before the undersigned magistrate judge, resulting in a settlement of all claims. The general concept of the settlement was that plaintiff would relinquish its claim for $140,000.00 for goods sold and delivered, as well as any claim for money damages arising from plaintiff's Lanham Act or common-law causes of action. In exchange, defendants promised to take a series of steps designed to remove defendants from the business of manufacturing and selling replacement cartridges for plaintiff's waterfree urinals, while preserving defendants' ability to manufacture and sell its own line of waterfree urinals and cartridges. The terms of the settlement agreement were memorialized in a memorandum agreement signed by both parties on January 25, 2008. A more formal settlement agreement was signed on March 6, 2008.

-2-

Relevant to the motion now before the court, the settlement agreement provided as follows:

- Defendants were required to immediately stop promoting or selling their present form of cartridges (called "old cartridges" in the agreement), except that defendants and their distributors would be allowed to fulfill existing commitments by filling fully executed purchase orders "from end-user customers in hand as of February 4, 2008, but not thereafter."  The purpose of this provision was explicitly identified as allowing defendants to fill orders received from or in the process of being sent by end-user customers as of January 25, 2008 (the date of signing the memorandum of agreement), but to prevent solicitation or filling of new orders after that date.  Defendants were required to provide plaintiff with a count of all sales of old cartridges for the period December 2007 through February 4, 2008.  (¶ 2(a)).

- No later than February 4, 2008, defendants were required to provide plaintiff with a complete inventory of old cartridges on hand, including all cartridges in the possession of distributors, sales people or agents.  (¶ 2(b)).

- No later than February 28, 2008, defendants were required to deliver all existing inventory of old cartridges (as identified in the inventory required by paragraph 2(b)) to an independent, bonded warehouse.  The warehouse would act as bailee of the cartridges, which could be released only for purposes of: (a) fulfilling warranty claims for Ecotech urinals designed for use with an old cartridge; (b) filling new orders for Ecotech urinals designed for use with an

-3-

old cartridge, until April 25, 2008; and (c) filling orders accepted under paragraph 2(a), that is, sales supported by an end-user purchase order in hand as of February 4, 2008. The settlement agreement set up a protocol for release of old cartridges by the warehouse for one of these purposes, which included previous approval by Falcon. (¶ 2(e)).

• Defendants' old cartridges, whether sold for use in an Ecotech urinal or a Falcon urinal, fit in Falcon urinals. Falcon therefore demanded that the Ecotech cartridge be modified so that it would fit only Ecotech urinals in the future. Defendants agreed to redesign their cartridge so that it would be unable to physically fit, or be easily modified to physically fit, plaintiff's waterfree urinals. The Ecotech urinal would be modified to accept the redesigned Ecotech cartridge (called "new cartridges"). The redesign was to be complete by April 25, 2008. Thereafter, defendants could sell their own line of waterfree urinals with the redesigned cartridge, which would not fit plaintiff's urinals. (¶ 3(a)).

• By February 4, 2008, defendants were required to provide Falcon with a complete inventory of *Falcon* urinals and cartridges in the possession of defendants or their distributors and to return all such items to Falcon no later than February 28, 2008. By February 28, 2008, defendants would return to plaintiff, at defendants' expense, all inventory of Falcon urinals or cartridges in defendants' possession or control. (¶ 5).

-4-

- The parties agreed that this court would retain jurisdiction to enforce the settlement agreement and consented to the dispositive jurisdiction of the undersigned magistrate judge to decide all issues arising out of the settlement. (¶ 9(a)). Motions for enforcement of the settlement are to be decided by the court summarily, without a jury. (¶ 9(e)). The parties agreed on a schedule of liquidated damages for certain breaches, (¶ 9(b), (c)) as well as the availability of injunctive relief, attorney's fees and costs. (¶ 9(e)).

On March 25, 2008, plaintiff filed the pending motion for enforcement of the settlement agreement (docket # 144). The motion alleged that defendants had failed by the required deadlines to:

- Supply the sales information related to its sales of cartridges to Falcon customers before February 4, 2008, an alleged violation of paragraph 2(a).

- Provide the name of a bonded warehouse as required by paragraph 2(e).

- Provide proof that the inventory of cartridges had been shipped to the warehouse, as required by paragraph 2(e).

- Supply documentation according to the protocol of paragraph 2(e) authorizing release of cartridges by the warehouse.

District Judge Janet T. Neff entered an order of reference, pursuant to the consent of the parties set forth in the settlement agreement. Defendants filed a response (docket # 149), supported by a one-page listing of sales and inventory. The court conducted a preliminary hearing on the motion on April 15, 2008. At that point, the court concluded that defendants' response was internally inconsistent and raised serious questions concerning defendants' compliance with the

-5-

terms of the settlement agreement, especially the requirement of paragraph 2(e) concerning deposit of all old cartridges into a bonded warehouse.  The court entered an order (docket # 151) enjoining defendants from selling or otherwise disposing of any old cartridge until further order of the court and requiring defendants to account at an evidentiary hearing for each of the 1,083 old cartridges that it reported  to have on hand or en route as of February 4, 2008, supported by customer purchase orders.

        The court conducted an evidentiary hearing on May 5, 2008, at which defendants presented the testimony of T.E. Janssen, as well as documentary evidence.  On the basis of the evidence presented at the hearing, the court makes the following findings of fact and conclusions of law.

### Findings of Fact

        1.    Defendants' Exhibit 1 consists of invoices from defendant Ecotech documenting shipments of Ecotech cartridges for use in *Falcon* urinals made after the date of the memorandum settlement agreement (January 25, 2008).  Also included in Exhibit 1 are some purchase orders or memoranda of telephonic orders from customers.  Exhibit 1 shows that defendants shipped 277 cartridges after January 25, 2008, for use in Falcon urinals.

        2.    With two exceptions, Exhibit 1 documents compliance by defendants with the requirement of paragraph 2(a) of the settlement agreement that defendants have in hand fully executed purchase orders from end users as of February 4, 2008, to justify such shipments.  (For purposes of assessing defendants' compliance with this requirement of paragraph 2(a), the court has construed "end-user customers" to include plumbers and other independent contractors who buy

product for installation in a client's facility, as long as the contractor is not controlled by defendants and is not a regular distributor.)

       3.     The two exceptions are invoices 3414 and 3415.  Invoice 3414 shows a shipment on February 8, 2008, of 48 cartridges for use in Falcon urinals to Ecotech West, a distributor.  Invoice 3415 shows a shipment of 48 more cartridges to Ecotech West on the same date.  At the evidentiary hearing, defendants were unable to produce purchase orders from *end users* for these 96 cartridges.  If no such purchase orders existed, shipment of these 96 cartridges to a distributor would be in violation of paragraph 2(a).  Defendants have since provided the court, however, with a sealed document between Falcon and Ecotech West, which represents that Ecotech West did not sell any old cartridges after February 4, 2008, other than pursuant to fully executed purchase orders from end users in hand as of that date.  This representation supplies the proof missing at the evidentiary hearing and is sufficient to demonstrate that defendants' shipment of 96 cartridges to its distributor Ecotech West on February 8, 2008, did not violate the settlement agreement.

       4.     Defendants' Exhibit 2 purports to document all shipments of Ecotech cartridges for use in *Ecotech* urinals after the date of the memorandum settlement agreement, January 25, 2008.  The invoices and other documents in Exhibit 2 show that defendants shipped about 600 old cartridges, ostensibly for use in Ecotech urinals, after the date of the memorandum settlement agreement, January 25, 2008.  These shipments, identified by invoice number, shipment date, number of cartridges, and purpose of shipment, are summarized in Table 1 below.  (The transactions are listed in Table 1 in the same order in which they are reflected in Exhibit 2.)

## TABLE 1

| Inv. No. | Shipment Date | No of Cartridges | Purpose of Shipment |
|---|---|---|---|
| 3441 | 2/25 | 3 | Warranty |
| 3406 | 2/8 | 1 | Warranty |
| *3454 | 3/17 | 1 | Warranty |
| *3495 | 4/2 | 1 | Warranty |
| *3498 | 4/2 | 1 | Warranty |
| *3488 | 4/2 | 4 | Sale of 4 cartridges with 4 urinals |
| *3484 | 3/26 | 3 | Warranty |
| *3452 | 3/7 | 24 | Warranty |
| *3453 | 3/7 | 7 | Warranty |
| *3455 | 3/7 | 5 | Warranty |
| *3458 | 3/10 | 2 | Sale of 2 cartridges with 2 urinals |
| *3459 | 3/10 | 1 | Sale of 1 cartridge with 1 urinal |
| *3460 | 3/11 | 5 | Sale of 5 cartridges with 5 urinals |
| *3462 | 3/11 | 50 | Sale of 50 cartridges with 12 urinals |
| *3463 | 3/11 | 6 | Sale of 6 cartridges for sales kits |
| *3467 | 3/17 | 1 | Sale of 1 cartridge with 1 urinal |
| *3470 | 3/21 | 5 | Sale of 5 cartridges with 2 urinals |
| *3472 | 3/21 | 2 | Sale of 2 cartridges with 1 urinal |
| *3471 | 3/21 | 10 | Sale of 10 cartridges |
| *3478 | 3/21 | 6 | Sale of 6 cartridges |
| *3476 | 3/21 | 2 | Sale of 2 cartridges with 2 urinals |
| *3481 | 3/26 | 2 | Warranty |
| *3480 | 3/26 | 1 | Warranty |
| *3497 | 4/2 | 6 | Warranty |
| *3492 | 4/2 | 12 | Sale of 12 cartridges with 1 urinal |
| *3504 | 4/9 | 1 | Sale of 1 cartridge with 1 urinal |
| *3465 | 3/13 | 58 | Sale of 58 cartridges with 58 urinals |
| *3447 | 3/5 | 192 | Sale of 192 cartridges with 192 urinals |
| *3490 | 4/2 | 50 | Sale of 50 cartridges with 12 urinals |
| *3461 | 3/11 | 14 | Sale of 14 cartridges with 14 urinals |
| *3493 | 4/2 | 11 | Sale of 11 cartridges with 11 urinals |
| *3506 | 4/11 | 1 | Sample for distributor |
| *3456 | 3/4 | 12 | Sale of 12 cartridges |
| 3443 | 2/27 | 4 | Sale of 4 cartridges with 3 urinals |
| 3430 | 2/20 | 28 | Sale of 28 cartridges with 28 urinals |
| 3428 | 2/20 | 1 | Warranty |
| 3423 | 2/15 | 1 | comp |
| 3426 | 2/18 | 2 | Sale of 2 cartridges with 2 urinals |
| 3422 | 2/15 | 1 | Sale of 1 cartridge with 1 urinal |
| 3434 | 2/15 | 1 | Sale of 1 cartridge |
| 3436 | 2/20 | 12 | Sale of 12 cartridges |
| 3411 | 2/8 | 6 | Sale of 6 cartridges |
| 3425 | 2/15 | 4 | Warranty |
| 3440 | 2/25 | 2 | Warranty |
| *3515 | 4/11 | 6 | Warranty |
| *3511 | 4/11 | 10 | Sale of 10 cartridges with 1 urinal |

| *3513 | 4/11 | 1 | Sale of 1 cartridge |
| *3512 | 4/11 | 2 | Sale of 2 cartridges with 2 urinals |
| *3516 | 4/11 | 1 | Shipment of sample urinal and cartridge |
| **3527 | 4/16 | 1 | Sale of 1 cartridge with 1 urinal |
| **3528 | 4/17 | 6 | Sale of 6 cartridges |
| **3532 | 4/18 | 5 | Sale of 5 cartridges |
| **3534 | 5/2 | 12 | Shipment of 12 sample cartridges |

5.     Paragraph 2(e) of the settlement agreement required defendants to deliver all existing inventory of old cartridges to an independent, bonded warehouse no later than February 28, 2008.  Thereafter, defendants were allowed to release old cartridges from the warehouse only for one of the three specific purposes defined in paragraph 2(c) of the agreement.  Before shipment, defendants were required to provide the warehouse and Falcon with customer invoices or warranty claims sufficient to demonstrate that the use of the old cartridges complied with paragraph 2(e).  In violation of paragraph 2(e), defendants failed to deliver any old cartridges to a bonded warehouse at any time before the hearing conducted on May 5, 2008.  Instead, defendants continued to ship cartridges to customers, as if paragraph 2(e) of the agreement did not exist.  Consequently, the transactions reflected in Table 1 with a shipment date after February 28, 2008, represent a violation of paragraph 2(e) of the settlement agreement.  These transactions are marked with a single asterisk in Table 1.  Only the shipments reflected in invoice numbers 3441, 3406, 3443, 3430, 3428, 3423, 3426, 3422, 3434, 3436, 3411, 3425, and 3440 do not represent violations of paragraph 2(e).  Regardless of the legitimacy of the purpose of the shipment, defendants were required to follow the protocol set forth in paragraph 2(e) for all shipments after February 28, 2008.

6.     In addition, those transactions identified with a double asterisk represented an independent violation of this court's injunctive order entered April 15, 2008.  On the basis of a *prima facie* showing of a violation of the settlement agreement, the court enjoined defendants from

"selling, transferring, shipping, or otherwise disposing of any 'old cartridge' as defined in the settlement agreement until further order of court."  The last four transactions shown on Table 1, representing four shipments made by defendants between April 16 and May 2, 2008, are in patent violation of the court's order.

       7.     Paragraph 5 of the settlement agreement required defendants to return all inventory of Falcon urinals or cartridges in their possession or control to Falcon no later than February 28, 2008.  Falcon's motion to enforce the settlement agreement contended that defendants had violated the order.  The testimony received at the evidentiary hearing established that defendants did return all Falcon inventory, but that it was not received by Falcon until April 4, 2008.  The reason for the delay was that defendants shipped the inventory to the wrong address.  The court is satisfied that defendants have substantially complied with the requirements of paragraph 5 and that plaintiff was not prejudiced by the short delay in receiving its inventory.

### Discussion

       Settlement agreements, even those resolving federal court litigation, are governed by state law, and the federal court with jurisdiction over the underlying dispute does not necessarily have jurisdiction over a claim for breach of the settlement agreement.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).  An exception to this rule exists where the court expressly retains jurisdiction over the settlement agreement.  *Id.* at 381-82.  In the present case, both the settlement agreement (¶ 9(a)) and the order of dismissal provide that the court will retain jurisdiction to enforce the terms of the settlement agreement.  Furthermore, the parties have consented in writing to the dispositive jurisdiction of a magistrate judge to hear and decide all issues arising from the

-10-

settlement agreement (¶ 9(a)) and have stipulated that the court should determine all such matters summarily and without a jury.  (¶ 9(e)).

The settlement agreement expressly adopts Michigan law to govern the construction and enforcement of the agreement.  (¶ 20).  Under Michigan law, a settlement agreement is a contract, and must be construed and applied as such.  *See MacInnes v. MacInnes*, 677 N.W.2d 889, 891 (Mich. Ct. App. 2004).  The principal goal in contract interpretation is to honor the intent of the parties as expressed in the words they chose.  *UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 579 N.W.2d 411, 414 (Mich. Ct. App. 1998).  In Michigan, contracts are enforced according to their terms, and this rule is a "corollary of the parties' liberty to contract."  *Coates v. Bastian Bros., Inc.*, 741 N.W.2d 539, 543 (Mich. Ct. App. 2007).  "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract."  *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005).  A fundamental tenet of Michigan jurisprudence is that unambiguous contracts are not open to judicial construction and "must be enforced as written."  *Rory*, 703 N.W.2d at 30.  When interpreting a contract, Michigan courts give terms their "plain and ordinary meaning, avoiding technical or constrained constructions."  *Coates*, 741 N.W.2d at 543.  Neither party contends that any of the settlement agreement's terms is ambiguous or vague.

Settlement of this lawsuit required protracted and detailed negotiations and represented significant compromises by both parties.  Plaintiff bargained for defendants' withdrawal from the marketing and sale of replacement cartridges designed to fit in Falcon urinals.  From plaintiff's point of view, the use of Ecotech cartridges in Falcon urinals was problematic and tended to harm plaintiff's reputation and the marketability of its product.  Because the case was never tried,

-11-

these allegations were never proven, but the settlement afforded plaintiff a guarantee that it would not be faced in the future with the problems that it perceived arising from defendants' sale of cartridges for Falcon waterfree urinals. In return, plaintiff relinquished its claim for $140,000.00 in "hard" damages (arising from goods sold and delivered to Ecotech when it was a distributor of Falcon products) as well as its claims under the Lanham Act and common law for damages arising from alleged breach of fiduciary duty and false advertising. For their part, defendants were absolved of possibly ruinous liability for money damages, while at the same time retaining their ability to compete in the marketplace with the sale of their own urinals and cartridges. Defendants were required to redesign their cartridge and urinals expeditiously, so that Ecotech cartridges could no longer be used in Falcon urinals. During the time that it took to redesign defendants' products, they were severely restricted in their ability to market and sell "old cartridges." The purpose of these restrictions, which were the subject of prolonged negotiation, was to prevent the market from being flooded at the last moment with Ecotech cartridges, which could be used in Falcon urinals, while at the same time preserving Ecotech's ability to service its existing client base.

In its motion to enforce the settlement agreement, plaintiff asserted that defendants had failed to account for all of the old cartridges on hand as required by paragraph 2(b) of the settlement agreement and that they had sold old cartridges in the absence of purchase orders from "end-use customers" in hand by February 4, 2008. The court is satisfied that defendants have accounted for all old cartridges on hand as of February 4, 2008, as required by paragraph 2(b) of the settlement agreement. The court is also satisfied that defendants' sale of old cartridges for use in Falcon urinals complied with the requirements of paragraph 2(a). Although some of the purchase orders on hand as of February 4, 2008, were from installers, plumbers, and other independent

contractors (rather than the ultimate client), the court does not deem this to be a violation of the settlement agreement. The stated purpose of the requirements of paragraph 2(a) was to "allow Defendants to field sales orders received from or in the process of being sent by end user customers as of January 25, 2008, and not to solicit new orders after January 25, 2008." (Settlement Agreement, ¶ 2(a)). In other words, the parties recognized that defendants' customers might have their legitimate expectations frustrated by an overly abrupt cessation of sales and allowed a ten-day grace period to accommodate orders in the pipeline. The testimony at the evidentiary hearing established that in certain instances defendants' "customers" are plumbers and other independent entities who purchase product for installation in a client's facility. As long as the installer is not a regular distributor of defendants or otherwise subject to their control, a purchase order from such an independent entity fits squarely within the exception created by paragraph 2(a).

Sales to regular distributors, however, would not qualify for the exception in paragraph 2(a). The settlement agreement treats Ecotech and its distributors and agents as a single entity. Therefore, the shipment of 96 Ecotech cartridges for use in Falcon urinals to Ecotech West, one of defendants' distributors, on February 8, 2008, would be a violation of the requirements of paragraph 2(a) in the absence of purchase orders in hand as of February 4, 2008, from customers. At the time of the evidentiary hearing, defendants did not have such customer purchase orders, leading the court to tentatively conclude at that time that this shipment breached paragraph 2(a). Defendants have since produced a sealed exhibit (attached to docket # 157) in which Ecotech West warranted that since February 4, 2008, it had not sold any old cartridges other than pursuant to fully executed purchase orders from end-user customers in hand as of February 4, 2008. Plaintiff was a party to that document. Because the document is filed under seal, it is not necessary to delve further

into its nature for purposes of this opinion. Suffice it to say that plaintiff is estopped from contending for a position contrary to that agreed to in the sealed document. This document provides sufficient proof to absolve defendants of a claim of breach of paragraph 2(a) of the settlement agreement arising from the February 8 shipment of 96 cartridges to Ecotech West.

Plaintiff's motion also charges defendants with violation of the provisions of paragraph 2(e) of the settlement agreement, which required deposit of all then-existing cartridges with a warehouse bailee no later than February 28, 2008. As noted above, the bailment provisions of paragraph 2(e) were designed as a safeguard to assure plaintiff that the remaining inventory of old cartridges would be used with Ecotech urinals (either the installed base or those sold in the future) and would not be purchased for use in Falcon products. Plaintiff did not trust defendants and wanted the remaining inventory of old cartridges in the hands of a neutral third party, who would release them only after defendants had proven that they were sold for a permitted purpose.

The testimony at the evidentiary hearing disclosed that by the February 28, 2008 deadline, defendants had merely identified a possible warehouse but had not entered into the required contract or sought plaintiff's approval of the warehouse, as required by paragraph 2(e). Indeed, by the date of the evidentiary hearing, May 5, 2008, defendants had done virtually nothing to discharge their obligations under paragraph 2(e). Defendants failed to deliver their existing inventory of old cartridges to the warehouse and failed to follow the protocol for release of cartridges. Rather, they continued to sell old cartridges to customers, as if paragraph 2(e) did not exist.

Ecotech's president, Mr. Janssen, claimed some difficulty in finding an appropriate warehouse, but his testimony fell far short of establishing an excuse for noncompliance with the clear requirements of paragraph 2(e). Defendants did not contact plaintiff to seek an extension of time or

-14-

otherwise attempt in good faith to comply with the settlement agreement.  Rather, defendants essentially wrote paragraph 2(e) out of the agreement and sought to justify their actions only when charged with a violation.  Defendants' conduct deprived plaintiff of a significant part of the bargained-for consideration.  Plaintiff did not trust defendants and was not willing to rely on their honesty and good faith.  Rather, after February 28, 2008, all of old cartridges were to be in the hands of a neutral third party, and shipments were to be approved by plaintiff in advance.  Defendants ignored their contractual obligations, placing plaintiff (and the court) in the very situation that paragraph 2(e) was designed to avoid -- plaintiff is now forced to accept defendants' word concerning the *bona fides* of its shipments after February 28, 2008.  The court finds that the shipments marked in Table 1 with the single or double asterisk were made in defiance of the requirements of paragraph 2(e).

Defendants have displayed the same cavalier attitude towards this court's injunctive order, entered April 15, 2008.  That order enjoined defendants from "selling, transferring, shipping, or otherwise disposing of 'old cartridge' as defined in the settlement agreement until further order of court."  The last four invoices listed in Table 1 all represent shipments of old cartridges after the issuance of the injunction.  Defendants attempt to justify their violation of the court's order by explaining that these shipments were not in breach of the agreement.  For example, the cartridges represented by invoice 3534 were allegedly sent to the company that supplies Ecotech with its urinals, to be used for evaluation and resizing of a mold.  This assertion may or may not be true, but the shipment nevertheless violated the court's order.  The order prohibited *any* transfer or shipment of old cartridges until further order of court.  Hence, the mere fact that a shipment might have been

for a benign purpose (in the mind of defendants) is no excuse.  Defendants should have applied to the court for relief from the order, rather than ignoring it.

Finally, the court finds no material violation of the requirements of paragraph 5, which directed defendants to return all Falcon inventory to plaintiff no later than February 28, 2008. The court is satisfied that the delay in returning the inventory was caused by the use of a wrong address and that plaintiff was not harmed by the delay.

The court has found a violation of paragraph 2(e) of the settlement agreement.  The parties have adopted a schedule of liquidated damages, pursuant to which the court may award $10,000.00, or actual damages, whichever is greater.  (¶ 9(c)).  Plaintiff has not presented evidence of actual damages but seeks an award of liquidated damages.  Under Michigan law, a liquidated damages provision "is simply an agreement by the parties fixing the amount of damages in the event of a breach" and is "enforceable if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive."  *UAW-GM Human Res. Ctr.*, 579 N.W.2d at 421. Such a provision is particularly appropriate "where actual damages are uncertain and difficult to ascertain or are of a purely speculative nature."  *Papo v. Aglo Rest. of San Jose, Inc.*, 386 N.W.2d 177, 181 (Mich. Ct. App. 1986).  Defendants have not advanced any reason why the liquidated damages provision that they agreed to is unreasonable, unconscionable or excessive under Michigan law.  The court finds that $10,000.00 in liquidated damages is an appropriate remedy for defendants' patent and unexcused violation of paragraph 2(e).

The court will not assess an additional monetary penalty for violation of the injunctive order.  Defendants would clearly be liable to a citation for contempt arising from their shipment of old cartridges after the date of the order.  The court, however, does not wish to prolong or complicate

the dispute between the parties, which has already endured five months beyond the "settlement" of this case. The assessment of $10,000.00 in liquidated damages for violation of paragraph 2(e) will suffice.

The settlement agreement also provides for the assessment of reasonable attorney's fees and costs. (¶ 9(e)). Plaintiff will be allowed to seek an award of attorney's fees and costs by filing a fee petition supported by an itemized statement detailing hours expended, services performed, and the rate charged for each hour. The petition for fees must be submitted within fourteen days. Defendant will have seven days in which to file objections. The court will then enter a final judgment, which will include the assessment of $10,000.00 liquidated damages plus whatever costs and fees are found to be reasonable.

Dated:  June 18, 2008                    /s/  Joseph G. Scoville_____
                                         United States Magistrate Judge